IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN SAGGIANI,<br><br>    Appellant,<br>v.<br><br>D. RAY STRONG, as the trustee of the Consolidated Legacy Debtors Liquidating Trust and D. RAY STRONG, as the trustee of the Castle Arch Opportunity Partners I Liquidating Trust,<br><br>    Appellees. | MEMORANDUM DECISION AND ORDER UPHOLDING THE BANKRUPCY COURT'S ORDER DENYING RULE 60(b) RELIEF<br><br>Case No. 2:16-cv-00553-JNP-BCW<br><br>District Judge Jill N. Parrish |

John Saggiani appeals from the bankruptcy court's denial of his Rule 60(b)(1) and (6) motion for relief from a final settlement order. He argues that the bankruptcy court abused its discretion when it determined that the requirements of Rule 60(b) had not been satisfied. Mr. Saggiani further argues that if relief from the final order is granted, he has a meritorious defense that he neglected to assert before the order was entered.

This court concludes that the bankruptcy court did not abuse its discretion when it determined that Mr. Saggiani had not satisfied the requirements of Rule 60(b). The court, therefore, affirms the bankruptcy court's denial of his Rule 60(b) motion.

## BACKGROUND

Castle Arch Real Estate Investment Company, LLC (Castle Arch Investment)[1] and two affiliated companies—Castle Arch Opportunity Partners I, LLC (Castle Arch Partners I) and Castle Arch Opportunity Partners II, LLC (Castle Arch Partners II)—filed for Chapter 11

---

[1] Several other companies were found to be alter egos of Castle Arch Investment and were consolidated with it for the purposes of the bankruptcy proceeding.

bankruptcy. Each of these three companies was assigned to a separate liquidating trust and D. Ray Strong was appointed as the trustee of all three liquidating trusts. Mr. Saggiani was an equity holder in Castle Arch Partners I and became a beneficiary of the Castle Arch Partners I Trust.

A number of claims existed between Castle Arch Investment and Castle Arch Partners I and Castle Arch Partners II. Because Mr. Strong was the trustee of all three of the liquidating trusts that administered the assets of these companies, he had a conflict of interest regarding these intercompany claims. The bankruptcy court, therefore, entered an order that set forth formal Conflict Resolution Procedures (CRPs) for the intercompany claims. The CRPs created special alternative procedures for resolving these intercompany claims. Under these procedures, the attorneys hired to represent each of the three trusts would advocate for each trust's rights and a neutral conflicts referee would resolve the intercompany claims.

The intercompany claim at the heart of this appeal was the transfer of real property and water rights (with an approximate value of $5 million) from Castle Arch Investment to Castle Arch Partners I that was completed less than one year before the filing of the bankruptcy case. Pursuant to CRPs, counsel for the Castle Arch Investment Trust and counsel for the Castle Arch Partners I Trust presented a proposal to resolve the preferential transfer claim related to this real estate transaction. The conflicts referee then mediated a settlement agreement between counsel for the Castle Arch Investment Trust and counsel for the Castle Arch Partners I Trust that returned the real property to Castle Arch Investment as a preferential transfer. In exchange, the Castle Arch Partners I Trust became an unsecured creditor with a claim to nearly $3 million from the future sale of the property.

On November 12, 2014, Mr. Strong filed a motion in the bankruptcy court to confirm the settlement agreement. Notice of the settlement motion was provided to Mr. Saggiani, and he was afforded an opportunity to object. But he decided not to conduct an independent investigation into the propriety of the settlement agreement, and he did not object to it. Indeed, no party objected to the settlement agreement. The bankruptcy court, having independently reviewed the settlement agreement and finding it appropriate, entered a final order affirming it on December 4, 2014.

On November 3, 2015, Mr. Saggiani filed a motion to set aside this final order under Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure. He argued that because the CRPs did not assign a specific deadline for asserting a preferential transfer claim, the CRPs must be read to incorporate the deadline for declaring such a claim under the rules that govern a bankruptcy court proceeding. He argued that because Mr. Strong did not make a formal claim in the bankruptcy court or make a similar claim under the CRPs by this deadline, the Castle Arch Investment Trust lost its right to assert such a claim well before the settlement agreement was entered or approved.

Mr. Saggiani further asserted that Rule 60(b) permitted the court to reopen the final bankruptcy order because he did not investigate whether he had a legal basis to object to the settlement agreement, and he did not "discover" this argument until sometime in September, 2015, when his Tennessee attorney alerted him to the fact that the Castle Arch Investment's former Chapter 11 counsel had raised this argument as a defense to a malpractice action brought by Mr. Strong. From September through mid-October, 2015, Mr. Saggiani and his attorney further investigated this legal argument. In mid-October, 2015 he found local counsel to pursue the matter, and on November 3, 2015—approximately 11 months after the bankruptcy court

entered a final order setting aside the property transfer—he filed a Rule 60(b) motion to set aside the order. He contended that the final settlement order should be set aside for either "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1) or "any other reason that justifies relief" under Rule 60(b)(6).

The bankruptcy court denied Mr. Saggiani's motion. For several reasons, the court determined that the order setting aside the real property transfer was not procedurally barred as Mr. Saggiani had argued. The bankruptcy court also ruled that he had not satisfied the requirements of Rule 60(b). First, the court found that Mr. Saggiani had not brought his motion "within the reasonable time contemplated by Rule 60(c)(1)." [Docket 16, p. 410]. Second, the bankruptcy court ruled that relief was not warranted under either subsection (1) or (6) because all of the facts relevant to Mr. Saggiani's newly asserted arguments were either known or easily discoverable before the court entered the final order approving the settlement agreement. [Docket 16, p. 409]. Thus, Mr. Saggiani's failure to assert his argument in a timely matter did not constitute excusable neglect. [Docket 16, p. 409–10].

Mr. Saggiani appeals from the denial of his Rule 60(b) motion.

## ANALYSIS

To prevail on a Rule 60(b) motion, the movant must show both "justification for relief" under the rule and "a meritorious defense." *Olson v. Stone* (*In re Stone*), 588 F.2d 1316, 1319 (10th Cir. 1978). Thus, the first order of business is to determine whether Rule 60(b) may be applied to reopen the final order entered in this case. Only then can the court determine whether Mr. Saggiani has presented a meritorious defense.

Denial of a Rule 60(b) motion is reviewed for "abuse of discretion, 'keeping in mind that Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances.'" *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) (citation omitted). A court does not

abuse its discretion unless its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (citation omitted).

The court concludes that the bankruptcy court did not abuse its discretion by denying Rule 60(b) relief for two reasons. First, the bankruptcy court did not abuse its discretion when it determined that Mr. Saggiani failed to bring his motion within a reasonable time. Second, the bankruptcy court did not err when it concluded that neither Rule 60(b)(1) nor Rule 60(b)(6) is an appropriate procedural vehicle to assert new legal theories that could have been raised before the final order was entered.

I.   THE 60(b) MOTION WAS NOT MADE WITHIN A REASONABLE TIME

A Rule 60(b)(1) motion "must be made within a reasonable time--and . . . no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1). "A motion is not timely merely because it has been filed within one year of the judgment." *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990). There must be an independent determination that the motion was brought within a reasonable time. There is no absolute cap on the time that a litigant has to file a Rule 60(b)(6) motion, but it must also "be made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

In order to determine whether a Rule 60(b) motion was brought within a reasonable time, courts examine "the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Mullin v. High Mountain*, 182 F. App'x 830, 833 (10th Cir. 2006) (unpublished) (quoting *Ashford v. Steuart,* 657 F.2d 1053, 1055 (9th Cir.1981)). Taking these considerations into account, the court concludes that the bankruptcy court did not abuse its discretion when it determined that Mr. Saggiani "has not sufficiently justified the delay in filing its [Rule 60(b)] motion." *White*, 915 F.2d at 1425.

The important considerations of "the reason for delay" and "the practical ability of the litigant to learn earlier of the grounds relied upon" laid out in *Mullin* support the bankruptcy court's conclusion. As the bankruptcy court correctly noted, "all of the relevant facts supporting the settlement agreement were known or discoverable before the settlement agreement was approved," yet Mr. Saggiani failed to assert his legal theory for why the settlement agreement was procedurally bared before the bankruptcy court approved the settlement. In fact, Mr. Saggiani averred in his declaration that accompanied his Rule 60(b) motion that because he had no reason to question the settlement or Mr. Strong's decisions, he decided not to conduct an independent investigation of the settlement or to raise an objection to it. [Appellant's Appx. 41]. Mr. Saggiani did not decide to investigate the propriety of the settlement agreement until he learned that Castle Arch Investment's former Chapter 11 counsel had raised an issue concerning the intercompany claims bar date as a defense in a separate malpractice lawsuit. Thus, Mr. Saggiani had the ability to discover the basis for his legal challenge, and his only reason for delay in asserting it was his decision not to investigate.[2]

The *Mullin* considerations of the "the interest in finality" and "prejudice to other parties" also support the bankruptcy court's timeliness determination. There is, of course, always an interest in the finality of judgments and final orders. Otherwise, litigation has the potential to

---

[2] In his reply brief, Mr. Saggiani asserts that one reason that he waited 11 months to bring his Rule60(b) motion is that Mr. Strong filed a tolling agreement with the bankruptcy court that purported to toll "any time-based bars including, but not limited to statutes of limitation and statutes of repose." [Appellant's Appx. 672]. Mr. Saggiani implies that this tolling agreement discouraged him from investigating whether Mr. Strong had asserted a timely notice of claim for the real property transfer. But there is no factual basis for this new assertion on appeal. Mr. Saggiani never said that he even read the tolling agreement or that this was a reason for his delay in the declaration he fled with the bankruptcy court. [Appellant's Appx. 41–42]. Nor has he cited any other evidence that the tolling agreement was the cause of his delay or demonstrated that he presented this argument to the bankruptcy court. Because there is no evidentiary basis for this assertion, and no indication that the bankruptcy court was given an opportunity to consider it, Mr. Saggiani's new argument on appeal cannot prevail.

become interminable. Moreover the 11-month delay in filing the 60(b) motion also necessarily prejudices the beneficiaries of the Castle Arch Investment Trust and the Castle Arch Partners I Trust because Mr. Saggiani's delay also postponed the date on which the trustee is able to distribute the assets of these trusts.

In light of these considerations, the bankruptcy court's determination that the Rule 60(b) motion was not made within a reasonable time is not "arbitrary, capricious, whimsical, or manifestly unreasonable." *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) (citation omitted). The bankruptcy court, therefore, did not abuse its discretion when it determined that Mr. Saggiani did not sufficiently justify his delay.

II.   **RULE 60(b) IS NOT AN APPROPRIATE PROCEDURAL VEHICLE TO ASSERT NEW LEGAL ARGUMENTS THAT COULD HAVE BEEN PRESENTED BEFORE THE ENTRY OF A FINAL JUDGMENT OR ORDER**

Mr. Saggiani neglected to assert a legal challenge to the bankruptcy court's final approval of the settlement agreement because he did not conduct an investigation at the time and he did not discover the legal basis for his argument until a later date. But "a Rule 60(b) motion is not an appropriate vehicle to advance new arguments" that could have been raised earlier. *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016); *see also Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996) ("Rule 60(b)(1) is not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument."); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (deeming a motion to reconsider to be a Rule 60(b) motion and holding that "'advanc[ing] new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed' is . . . inappropriate." (first alteration in original)); *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1424–25 (10th Cir. 1990) (rejecting a litigant's attempt to assert a

new legal defense by way of a Rule 60(b)(1) motion because the litigant had sufficient time to identify and raise the issue before the final judgment was entered). Mr. Saggiani provides no authority for the proposition that either Rule 60(b)(1) or Rule 60(b)(6) permits litigants to take a mulligan and receive a second opportunity to assert legal arguments that could have been asserted prior to the merits determination.

In an attempt to overcome this Tenth Circuit precedent, Mr. Saggiani argues that the final settlement order in this case was, in effect, a default judgment that may be set aside under Rule 60(b)(1), which permits relief from a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect." *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2857 (2012) ("The case for calling for great liberality in granting Rule 60(b) motions, for the most part, have involved default judgments. There is much more reason for liberality in reopening a judgment when the merits of the case have never been considered . . . .""). But this analogy is inapt. The preferential transfer claim was not resolved by way of a procedural default. The lawyers for the two trusts litigated the merits of this claim under the CRPs and the neutral conflicts referee mediated a settlement agreement. The beneficiaries were then given an opportunity to object before the bankruptcy court independently reviewed and approved the settlement agreement. The fact that Mr. Saggiani, as one of the many beneficiaries of the Castle Arch Partners I trust, failed to object to the settlement agreement before it was entered does not make the final order similar to a default judgment. Thus the liberal application of rule 60(b)(1) has no application here.[3]

---

[3] Indeed, Mr. Saggiani seeks to use Rule 60(b)(1) to overturn a merits determination so that he can attempt to resolve the preferential transfer claim based upon a procedural default. This is the exact opposite of the typical default judgment scenario that requires liberality in reopening judgments.

Mr. Saggiani further argues that he is entitled to relief under Rule 60(b)(6), which permits a final order to be set aside for "any other reason that justifies relief." He asserts that the "extraordinary circumstances" required to justify Rule 60(b)(6) relief, *State Bank of S. Utah v. Gledhill* (*In re Gledhill*), 76 F.3d 1070, 1080 (10th Cir. 1996) (citation omitted), are present in this case because Mr. Strong disregarded his fiduciary duties by not disclosing the notice of claim argument to Mr. Saggiani. But Mr. Strong was not a fiduciary regarding the intercompany claims and had no obligation to identify potential arguments regarding these claims. Indeed, as a trustee to all three of the bankruptcy trusts, he had an obligation not to involve himself in the resolution of these claims.

Mr. Saggiani further contends in his reply brief that the bankruptcy court should have granted his Rule 60(b)(6) motion because he has a meritorious defense. In effect, he asserts that Rule 60(b)(6) relief is justified whenever a litigant can proffer a meritorious argument that a court erred when it entered a final judgment or order. But this would convert a Rule 60(b)(6) motion to something akin to an appeal by right, except that such a motion would not be limited by a strict deadline or the preservation rule. A Rule 60(b) motion "is not a substitute for an appeal." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005).[4]

Thus, neither Rule 60(b)(1) nor Rule 60(b)(6) justify relief from the final order at issue here. For this independent reason, the court concludes that the bankruptcy court did not abuse its discretion by denying the 60(b) motion.

---

[4] Moreover, the court agrees with the appellee that Mr. Saggiani has not presented a meritorious defense. Mr. Strong did not default on the preferential transfer claim by failing to file a formal notice in the bankruptcy court. The CRPs completely supplanted the procedural bankruptcy rules for the intercompany claims and provided exclusive alternative procedures by which the preferential transfer claim would be resolved, and the conflict referee was given broad authority to determine the procedures that would be employed in resolving the claim. [Appellant's Appx. 694]. There was no need to follow bankruptcy court procedures and no textual basis to read these formal requirements into the CRPs.

## CONCLUSION

The court affirms the bankruptcy court's order denying Mr. Saggiani's Rule 60(b) motion.

Signed March 17, 2017.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge
